```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
HELENE PATRICIA KEANE, et al.,                                   :
                                                                 :
                              Plaintiffs,                        :
                                                                 :            21-cv-8257 (LJL)
              -v-                                                :
                                                                 :            OPINION AND ORDER
BARBARA Q. VELARDE, Chief, USCIS Office of                       :
Administrative Appeals, et al.,                                  :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

`USDC SDNY`
`DOCUMENT`
`ELECTRONICALLY FILED`
`DOC #:_____`
`DATE FILED: 08/19/2022`

LEWIS J. LIMAN, United States District Judge:

Defendants Barbara Q. Velarde, Chief, United States Citizenship and Immigration Services ("USCIS") Office of Administrative Appeals; Adam N. Bergeron, Field Office Director, USCIS Providence Field Office; Phyllis Coven, District Director, USCIS New York District Office; and Ken Cuccinelli,[1] Acting Director, USCIS (collectively "Defendants") move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 33. Plaintiffs Helene Patricia Keane, Tara Michelle Keane, Daniel Daskalakis, and Jason Daskalakis (collectively "Plaintiffs")[2] brought this mandamus action to compel Defendants to issue certificates of citizenship to Daniel Daskalakis and Jason Daskalakis under Section 322 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1433. Dkt. No. 1.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

The following facts are accepted as true for purposes of this motion only.

---

[1] Ur M. Jaddou is automatically substituted for Ken Cuccinelli. *See* Fed. R. Civ. P. 25(d).
[2] Helene Patricia Keane was previously dismissed for lack of standing. Dkt. No. 23.

Tara Keane ("Tara") is a United States citizen residing in Ireland and is the mother of Jason Daskalakis ("Jason") and Daniel Daskalakis ("Daniel"). Dkt. No. 1 ("Compl.") ¶ 2. Jason and Daniel were born in Greece on March 8, 1993 and May 8, 1995, respectively. Dkt. Nos. 1-1, 1-2.

On August 17, 1998, Tara applied for naturalization on behalf of Jason and Daniel, who were then five years old and three years old, respectively, by submitting N-600 applications to the legacy Immigration and Naturalization Service ("INS"), which is now the USCIS. Compl. ¶¶ 2–4, 12; *see also* Dkt. Nos. 1-1, 1-2. The applications were submitted pursuant to Section 322 of the INA, 8 U.S.C. § 1433, which governs the naturalization of children born abroad to U.S. citizens.

Because Tara did not have the required physical presence in the United States under the statute, she sought to use the physical presence of her mother Helene Keane ("Helene")—i.e., the grandmother of Jason and Daniel; Helene is a United States citizen residing in Connecticut. Compl. ¶¶ 1, 12.

On December 23, 1999 and again on August 6, 2001, the New York office of the INS requested additional evidence of Helene's physical presence and the original birth certificates of Daniel and Jason. *Id.* ¶ 13.

On September 10, 2001, Helene hand-delivered the requested documentation to the INS office in New York, but the INS did not accept the documentation and instructed Helene to mail the documents instead. *Id.* ¶ 14. Helene mailed the documentation that day from the Church Street Post Office, which is about two blocks from the World Trade Center. *Id.*; *see also* Dkt. No. 1-3. The documentation, however, never made it to the respective INS files for Jason and Daniel. Compl. ¶ 15.

On March 5, 2002, the INS denied the N-600 applications of Jason and Daniel, stating that the applicants had failed to respond to the requests for additional evidence. *Id.* ¶¶ 3–4, 16; *see also* Dkt. Nos. 1-4, 1-5.

Tara, on behalf of Jason and Daniel, timely appealed the denials to the agency's Office of Administrative Appeals and submitted the previously provided evidence requested by the INS and the proof of mailing. Compl. ¶¶ 3–4, 17. The INS office in New York date stamped the appeals on April 3, 2002. *Id.* ¶ 17; *see also* Dkt. Nos. 1-6, 1-7.

After receiving the timely appeals, the agency mishandled the files and failed to act on the appeals. Compl. ¶ 18.

Jason turned eighteen on March 8, 2011, and Daniel turned eighteen on May 8, 2013.

On June 11, 2019, after having received no response from the agency for seventeen years, Plaintiffs submitted new appeals. *Id.* ¶ 19; *see also* Dkt. Nos. 1-8, 1-9.

On October 11, 2019, the USCIS office in Providence, Rhode Island considered Daniel's 2019 appeal and denied Daniel's application because Daniel was no longer under the age of eighteen. Compl. ¶ 20; *see also* Dkt. No. 1-10. Because Daniel was no longer under the age of eighteen, the decision did "not reach the issues of whether [he] resided outside of the United States in the legal and physical custody of [his] U.S. citizen mother, or whether [his] maternal grandmother met the physical presence requirements set forth" in the statute. Dkt. No. 1-10 at 2. Daniel appealed, and on May 21, 2020, the Administration Appeals Office of USCIS ("AAO") denied the appeal. Compl. ¶ 21; *see also* Dkt. No. 1-11. That same day, the AAO also adjudicated Daniel's original appeal.[3] Compl. ¶ 21.

---

[3] The complaint alleges that the AAO adjudicated Daniel's original appeal on May 21, 2020 and cites to "Exhibit G-2," but no exhibit by that name was attached to the complaint.

3

As of the date of the complaint in this case, Jason's two appeals were pending.[4]  *Id.* ¶ 22.

## PROCEDURAL HISTORY

The complaint in this case was originally filed in the United States District Court for the District of Connecticut on July 14, 2020.  Dkt. No. 1.  The complaint brings causes of action for mandamus pursuant to 28 U.S.C. § 1361; for violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b); and for equitable estoppel.  Compl. ¶¶ 23–30.  Plaintiffs seek an order requiring USCIS to issue certificates of citizenship to Jason and Daniel *nunc pro tunc*.

On September 18, 2020, Defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss plaintiff Helene for lack of standing and moved, pursuant to Federal Rule of Civil Procedure 12(b)(3), to dismiss for improper venue or, in the alternative, to transfer the case.  Dkt. Nos. 13, 14.  On April 8, 2021, Defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. No. 20.

On September 17, 2021, Judge Bolden of the District of Connecticut granted the motion to dismiss Helene for lack of standing, denied the motion to dismiss for improper venue, and granted the motion to transfer the case to the United States District Court for the Southern District of New York.  Dkt. No. 23.  Judge Bolden also denied without prejudice to renewal Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. No. 24.  The case was transferred to this Court on October 6, 2021.  Dkt. No. 25.

On December 7, 2021, Defendants renewed their motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. No. 33.  Plaintiffs filed a memorandum

---

[4] Plaintiffs note in their briefing papers that Jason's appeal has since been adjudicated.  Dkt. No. 35 at 1 n.1; *see also* Dkt. No. 34-1.  On January 14, 2021, the agency denied Jason's appeal for the same reasons it denied Daniel's appeal.  Dkt. No. 34-1.

4

of law in opposition to the motion on December 22, 2021.  Dkt. No. 35.  Defendants replied on March 11, 2022.  Dkt. No. 41.  The Court held oral argument on the motion on August 11, 2022.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of [its] own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendants argue that the case should be dismissed because the requested relief—*nunc pro tunc* issuance of certificates of citizenship—is not available.  Dkt. No. 34 at 9.  Defendants contend that, because Jason and Daniel are now over the age of eighteen, they no longer meet the statutory requirements of 8 U.S.C. § 1433.  *Id.* at 14.  They also argue that equitable relief is unavailable when the statutory requirements for naturalization are not met.  *Id.* at 18–21.  Plaintiffs respond that 8 U.S.C. § 1433 only requires that an applicant for naturalization be under the age of eighteen at the time the application is submitted and not, as Defendants read the statute, at the time the application is adjudicated.  Dkt. No. 35 at 2–4.  And even if the statute is

not interpreted in this way, Plaintiffs contend that courts may order the agency to exercise the equitable remedy of *nunc pro tunc* relief. *Id.* at 5–8.

The Court first addresses the interpretation of 8 U.S.C. § 1433 before turning to the issue of equitable relief. The Court then considers Plaintiffs' claims for mandamus and equitable estoppel.[5]

## I.   Interpreting 8 U.S.C. § 1433

"When interpreting a statutory provision, we begin with the language of the statute." *Zepeda-Lopez v. Garland*, 38 F.4th 315, 320 (2d Cir. 2022) (quoting *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013)); *see also Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021) ("[W]e start where we always do: with the text of the statute."). The exercise is contextual. "[W]e look to both the language itself and the specific context in which that language is used." *Manning v. Barr*, 954 F.3d 477, 482 (2d Cir. 2020) (quoting *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018)). "Where the plain text does not conclusively resolve the question, we can draw upon a variety of interpretive tools, including statutory structure, to discern the text's meaning and purpose." *Cuthill v. Blinken*, 990 F.3d 272, 281 (2d Cir. 2021); *see also Puello v. Bureau of Citizenship & Immigr. Servs.*, 511 F.3d 324, 327 (2d Cir. 2007) ("In ascertaining the plain meaning of a statute, the court must look to the particular

---

[5] Defendants argue that the APA claim should be dismissed as moot because USCIS has now acted on the appeals of both Jason and Daniel. Dkt. No. 34 at 17–18. Plaintiffs fail to defend their APA claim in their opposition brief; Plaintiffs, however, acknowledge that Jason's pending appeal had been adjudicated. Dkt. No. 35 at 1 n.1. "Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 584 n.12 (S.D.N.Y. 2021) (quoting *Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017)). The Court deems the APA claim abandoned because Plaintiffs failed to defend against its dismissal. And even if the claim had not been abandoned, the APA claim appears moot because there are no longer any pending adjudications before the agency with respect to Jason and Daniel. The APA claim is thus dismissed.

statutory language at issue, as well as the language and design of the statute as a whole." (quoting *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988))). "In addition to the text and structure of the statute, Congress's purpose in enacting the [statute]—as reflected in the legislative history—can help us decipher the meaning of the statutory language." *Cuthill*, 990 F.3d at 284 (citing *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020)); *see also Puello*, 511 F.3d at 327 ("If the meaning of a statute is ambiguous, the court may resort to legislative history to determine the statute's meaning. But in so doing, we must 'construct an interpretation that comports with [the statute's] primary purpose and does not lead to anomalous or unreasonable results.'" (alteration in original) (citations omitted) (quoting *Connecticut ex rel. Blumenthal v. United States Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir. 2000))).

Section 322 of the INA, 8 U.S.C. § 1433, addresses the naturalization of children born abroad to U.S. citizens. The relevant, prior version of 8 U.S.C. § 1433 provided[6]:

> A parent who is a citizen of the United States may apply to the Attorney General for a certificate of citizenship on behalf of a child born outside the United States. The Attorney General shall issue such a certificate of citizenship upon proof to the satisfaction of the Attorney General that the following conditions have been fulfilled:
>
> (1) At least one parent is a citizen of the United States, whether by birth or naturalization.
>
> (2) The child is physically present in the United States pursuant to a lawful admission.
>
> (3) The child is under the age of 18 years and in the legal custody of the citizen parent.
>
> (4) If the citizen parent is an adoptive parent of the child, the child was adopted by the citizen parent before the child reached the age of 16 years and the child meets

---

[6] The parties agree that the version of the statute at issue in this case is the version that was in effect at the time that Jason and Daniel were born. Dkt. No. 34 at 13; Transcript of August 11, 2022 Oral Argument; *see also Jaen v. Sessions*, 899 F.3d 182, 186 (2d Cir. 2018) ("Citizenship of a person born abroad is determined by law in effect at the time of birth." (quoting *Hizam v. Kerry*, 747 F.3d 102, 105 (2d Cir. 2014))).

>the requirements for being a child under subparagraph (E) or (F) of section 1101(b)(1) of this title.
>
>(5) If the citizen parent has not been physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years—
>
>(A) the child is residing permanently in the United States with the citizen parent, pursuant to a lawful admission for permanent residence, or
>
>(B) a citizen parent of the citizen parent has been physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

8 U.S.C. § 1433(a) (effective to Dec. 6, 1999).

Plaintiffs assert that the conditions for naturalization set forth in the statute—including the requirement that the applicant be under the age of eighteen—need only have been met at the time the application is *submitted* to the agency. Defendants, by contrast, contend that the requirements must also be met at the time the application is *adjudicated* by the agency. The answer is consequential. If the conditions need only be satisfied at the time of submission, the applicant can lock in his or her right to naturalization as of that time. It would be irrelevant if circumstances change—if, for example, the applicant ceases to be under eighteen or ceases to be in the custody of a citizen parent or to be physically present in the United States. On the other hand, if the conditions must be satisfied at the time of adjudication, the Attorney General can take each of those changed circumstances into account.

The answer cannot be gleaned by reference to the dictionary alone. *See generally* Felix Frankfurter, Some Reflections on the Reading of Statutes (1947). The statute contains several different requirements and two relevant verb tenses. It requires that (1) the parent be a citizen of the United States; (2) the child be physically present in the United States pursuant to a lawful admission; and (3) the child be both under 18 and be in the legal custody of the citizen parent. 8 U.S.C. § 1433(a). It also has provisions if the citizen parent is an adoptive parent and if the

citizen parent has not been physically present in the United States for a period of less than five years. *Id.* Each of these requirements uses the present tense. *See, e.g.*, *id.* § 1433(a)(3) ("The child *is* under the age of 18 years . . . ."). The preceding part of the statute, however, uses the present perfect tense. It provides that "[t]he Attorney General shall issue such a certificate of citizenship upon proof to the satisfaction of the Attorney General that the following conditions *have been fulfilled*." *Id.* § 1433(a) (emphasis added). One other piece is relevant to this statutory puzzle—the statute speaks to two separate acts of the Attorney General: first she must satisfy herself that the conditions "have been fulfilled," and second, after satisfying herself that the conditions have been satisfied, she must issue the certificate of citizenship.

The Supreme Court and Second Circuit have instructed that "Congress' use of a verb tense is significant in construing statutes." *Barscz v. Dir., Office of Workers' Comp. Programs*, 486 F.3d 744, 750 (2d Cir. 2007) (quoting *United States v. Wilson*, 503 U.S. 329, 333 (1992)); *see also Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."). In this case, however, the verb tense does not alone indicate the time at which the conditions that allow the Attorney General to naturalize a child under Section 1433 must exist— whether at the time of application or at the time of adjudication. "The present perfect tense 'refers to (1) a time in the indefinite past . . . , or (2) a past action that comes up to and touches the present.'" *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (quoting Chicago Manual of Style ¶ 5.119 (15th ed. 2003)); *see also id.* at 301 ("[T]he present perfect tense can refer either to a time in the indefinite past *or* a past action that has continuing relevance—that 'comes up to and touches the present.'"); *Santos-Reyes v. Att'y Gen. of U.S.*, 660 F.3d 196, 199 (3d Cir. 2011) ("The present-perfect tense refers to an action that is now completed, or continues up to the

present." (internal quotation marks omitted)); *Padilla-Romero v. Holder*, 611 F.3d 1011, 1013 (9th Cir. 2010) ("As a purely grammatical matter, the use of the present perfect tense 'has been,' read in isolation from the surrounding text of the statute, can connote either an event occurring at an indefinite past time ('she has been to Rome') or continuing to the present ('she has been here for five hours').").

The second definition of the present perfect tense—referring to a past action that comes up to and touches the present—aligns exactly with Defendants' interpretation of the statute. According to Defendants, the conditions listed in the statute must have been met in the past (e.g., at the time of application) and must continue to be true to the present. *See Commonwealth v. U.S. E.P.A.*, 165 F.3d 26 (6th Cir. 1998) ("According to standard usage, the present perfect tense denotes past action with an abiding effect or continuing relevance."). However, the first definition of the present perfect tense, which refers to a time in the indefinite past, in theory could refer to either of the relevant time periods—application or adjudication.

The remainder of the statute and the usage of the language in context provides the ready answer. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *King v. Burwell*, 576 U.S. 473, 492 (2015) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)); *see also Pierre v. Holder*, 738 F.3d 39, 54 (2d Cir. 2013) ("It is axiomatic that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, we are not guided by a single sentence or member of the sentence but (rather) look to the provisions of the whole law, and to its object and

policy." (internal quotation marks omitted) (quoting *Langhorne v. Ashcroft*, 377 F.3d 175, 180 (2d Cir. 2004))).

Section 1433 is not intended to confer the right to citizenship on the offspring of a United States citizen by the fact of birth alone. "There are 'two sources of citizenship, and two only: birth and naturalization.'" *Miller v. Albright*, 523 U.S. 420, 423 (1998) (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)). "Within the former category, the Fourteenth Amendment of the Constitution guarantees that every person 'born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.'" *Id.* at 423–24 (quoting *Wong Kim Ark*, 169 U.S. at 702). But "[p]ersons not born in the United States acquire citizenship by birth only as provided by Act of Congress." *Id.* at 424. Section 1433 is such an act of Congress, and careful analysis of Section 1433 in its entirety demonstrates the object and policy of the statute is addressed to something aside from citizenship by birth alone. It is addressed to preserving the integrity of the family unit and to avoiding the disruption of that unit when the parent enjoys the privileges and assumes the responsibilities of citizenship in the United States while the child over whom she exercises custody owes allegiance alone and derives benefits and protections alone from another sovereign. This statutory purpose is evident from the text of the statute itself. When specifying the requirements for naturalization, 8 U.S.C. § 1433 speaks in terms of "parent" and "child." The term "child" was also defined to mean "an *unmarried* person under twenty-one years of age" who met certain other conditions. 8 U.S.C. § 1101(b)(1) (effective to Apr. 23, 1996) (emphasis added). Moreover, and importantly, it is not sufficient that the child be "under the age of 18 years," he must also be "in the legal custody of the citizen parent." *Id.* § 1433(a)(3). The statute thus speaks to, and furthers, the "legal" responsibility of the United States citizen parent. If the

United States citizen parent does not owe duties to the child applicant for citizenship—if, for example, the child is married or is in the custody of another parent—the child is not eligible for naturalization under the statute. Likewise, if the citizen parent does not meet the physical presence requirement, one of the alternative avenues for meeting this condition is for the child to be "residing permanently in the United States with the citizen parent." *Id.* § 1433(a)(5)(A). By using the term "child," who by definition must be unmarried, and by referring to the custodial relationship and to the possible relevance of permanent residence with the citizen parent, the statutory language makes clear that its object is the integrity of the family unit and that the granting of citizenship to the minor is intended as a means to that objective and that an end on its own.

This interpretation also perfectly accords with the legislative history. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 948 (2022) ("[T]hose who consider legislative history will find that history persuasive here."). "Congress introduced provisions for the naturalization of children born abroad to U.S. citizens in the Nationality Act of 1940 and continued them without substantial change in the Immigration and Nationality Act of 1952." 7 Immigration Law and Procedure § 97.02 (2022). "Congress amended INA § 322 in 1994 and again in 2000 to make it easier for children born and residing oversees to become U.S. citizens." *Id.* "The obvious purpose of these changes is unity of citizenship in the family." *Id.* Indeed, the House Report accompanying the 1994 amendments and discussing the need for the legislation noted that because some children born abroad "cannot be naturalized as long as the family resides abroad, family members become and remain separated by nationality." H.R. Rep. No. 103-387, at 5 (1993), *reprinted in* 1994 U.S.C.C.A.N. 3516, 3517. The INA's legislative history also recites an interest in preservation of the family unit more generally. *See Pierre*, 738 F.3d at

52; *see also* H.R. Rep. No. 1365 at 29 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1680 ("[The INA] implements the underlying intention of our immigration laws regarding the preservation of the family unit."); S. Rep. No. 82-1137 at 16 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1105, 1120 (describing the INA as "consistent with the well-established policy of maintaining the family unit wherever possible").

Given this statutory context and the broader statutory scheme, it readily follows that Section 1433 requires the conditions for naturalization to be met at the time the agency adjudicates the application—rather than when the application is merely submitted.  The reference to "have been fulfilled" recognizes that there are two relevant time periods—the time for issuance of the certificate of citizenship and the immediately preceding time when the conditions for naturalization must have been satisfied.  That interpretation satisfies the statutory object and policy.  If, at the time of adjudication, the child is under eighteen and is in the legal custody of the United States citizen parent (and if the other conditions are satisfied), then the Attorney General must grant a certificate of citizenship.  Any other decision would lead to what Congress considered an intolerable result—custodial parent and child who owe allegiances to different sovereigns.  But if, by contrast, those conditions are not satisfied at the time of adjudication—if for example, the sole citizen parent renounces United States citizenship or if the parent no longer has legal responsibility for the child, then the offspring of the United States citizen must seek citizenship through another route.  It would not serve the purposes for which Section 1433 was intended to require that a certificate of citizenship be granted under those circumstances.  *See King*, 576 U.S. at 492–93 ("We cannot interpret federal statues to negate their own stated purposes." (quoting *New York State Dep't of Social Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973))).  Being able to "lock in" one's eligibility for naturalization at the moment the

application is submitted, regardless of subsequent events, would run counter to the statutory purpose. *See Van Buren*, 141 S. Ct. at 1661 ("[T]he fallout underscores the implausibility of the . . . interpretation."); *Cuthill*, 990 F.3d at 281 ("[W]e are mindful of the well-established rule that 'absurd results are to be avoided.'" (quoting *McNeill v. United States*, 563 U.S. 816, 822 (2011))).

Under this interpretation of 8 U.S.C. § 1433, the Court determines that neither Jason nor Daniel qualify for naturalization under the statue because—even though they were under the age of eighteen at the time their mother applied for their naturalization—they are now both over the age of eighteen. Because the statutory conditions for naturalization must be met at the time of adjudication, and not at the time the application was submitted, Jason and Daniel do not qualify for naturalization under 8 U.S.C. § 1433.[7]

## II. Equitable Relief Is Unavailable Here

Defendants argue that under the Supreme Court precedent *INS v. Pangilinan*, 486 U.S. 875 (1988), equitable relief is not available when an individual does not meet the statutory criteria for citizenship. Dkt. No. 34 at 11–13; Dkt. No. 41 at 6–8. Plaintiffs respond that courts and the agency have the power to authorize *nunc pro tunc* equitable relief and that *Pangilinan* is distinguishable. Dkt. No. 35 at 4–8.

---

[7] Plaintiffs point to the district court's statement in *Gulotti v. Holder* that it "doubt[ed] that the agency may take advantage of its own delay to prejudice an applicant who files a timely application but turns 18 after filing it" and that "allowing the agency to interpret 8 U.S.C. § 1433(a)(3) in this way injects an unacceptable degree of arbitrariness into the application process." 2011 WL 13176083, at *2 (S.D.N.Y. May 6, 2011). But this statement was merely dicta as the district court found that the plaintiffs could not satisfy a different subsection of the statute. *Id.*; *see also Gulotti v. Holder*, 486 F. App'x 219, 221 n.2 (2d Cir. 2012) (summary order) (specifically noting that the district court's statement was made in *dicta*). In addition, applicants who are subject to agency delay are not without a remedy so long as they still meet the statutory requirements for naturalization. *See infra* Section III.A.

15

In *INS v. Pangilinan*, the Supreme Court considered whether a court could order naturalization as an equitable remedy when an individual does not have a statutory right to citizenship. 486 U.S. at 882–83. The Supreme Court held that "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations." *Id.* at 885. "An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare." *Id.* at 884 (quoting *United States v. Ginsberg*, 243 U.S. 472, 474 (1917)); *see also id.* at 882 ("Article I, § 8, cl. 4, of the Constitution provides: 'The Congress shall have Power . . . [t]o establish an uniform Rule of Naturalization . . . .'"). "Once it has been determined that a person does not qualify for citizenship, . . . the district court has no discretion to ignore the defect and grant citizenship." *Id.* at 884 (quoting *Fedorenko v. United States*, 449 U.S. 490, 517 (1981)). According to *Pangilinan*, "the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *Id.* at 883–84. "Rather, it has been given them as a specific function to be performed in strict compliance with the terms of an authorizing statute which says that '[a] person may be naturalized . . . in the manner and under the conditions prescribed in this subchapter, *and not otherwise*.'" *Id.* at 883 (quoting 8 U.S.C. § 1431(d)).

In addition, the Second Circuit has cited *Pangilinan* for the proposition that "[w]ell-settled case law bars a court from exercising its equity powers to naturalize citizens." *Hizam v. Kerry*, 747 F.3d 102, 111 (2d Cir. 2014); *see also id.* at 110 ("Courts cannot grant citizenship through their equitable powers." (citing *Pangilinan*, 486 U.S. at 885)); *Spaulding v. Sessions*,

16

751 F. App'x 130, 134 (2d Cir. 2018) (summary order) (stating that the petitioner "had no statutory entitlement to citizenship, and neither we nor the agency are empowered to confer it upon him, by equity or otherwise"); *Persuad v. Sessions*, 715 F. App'x 75, 76 (2d Cir. 2018) (summary order) ("As the Government argues, the Supreme Court's decision in *INS v. Pangilinan* likely precludes both federal courts and the agency from granting citizenship on an equitable basis where the alien has not fulfilled the statutory requirements for citizenship."); *Walcott v. Holder*, 592 F. App'x 25, 27 (2d Cir. 2015) (summary order) ("[I]t is well-established that we cannot naturalize citizens through our equitable powers."). And applying *Pangilinan*, the Second Circuit in *Hizam v. Kerry* concluded "that courts lack the authority to exercise our equitable powers to achieve a just result here"—despite the equities "overwhelmingly" favoring the noncitizen in that case. 747 F.3d at 111.

Under *Pangilinan* and the line of cases applying *Pangilinan*, equitable relief is not available to Plaintiffs. As discussed, *supra* Section I, Jason and Daniel do not meet the statutory requirements for naturalization under 8 U.S.C. § 1433(a). They did not qualify at the time the complaint in this action was filed. Thus, this Court lacks the power to confer citizenship on them "by application of the doctrine of estoppel, . . . by invocation of equitable powers, . . . [or] by any other means." *Pangilinan*, 486 U.S. at 885. Because Jason and Daniel do not qualify for naturalization under Section 1433, "the district court has no discretion to ignore the defect and grant citizenship." *Id.* at 884. The Court may not grant equitable relief here.[8]

---

[8] Plaintiffs argue that the agency previously granted equitable relief in similar circumstances in the *Matter of M-M-*. Dkt. No. 35 at 4–5; *see also* Dkt. Nos. 35-1, 35-3. At oral argument, Defendants were unable to explain what occurred in the *Matter of M-M-* but argued that the agency's decision there is not precedential and does not override *Pangilinan*. The Court agrees. The *Matter of M-M-* does not provide a basis for the Court to grant equitable relief in contravention to *Pangilinan*. *Cf. Spaulding*, 751 F. App'x at 134 ("The BIA acknowledged that USCIS granted Marlon's brother a certificate of citizenship under seemingly identical

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs contend that *Pangilinan* is distinguishable and only extends to cases where the petitioners are not statutorily eligible for citizenship at the time of the application. Dkt. No. 35 at 5–6. But *Pangilinan* cannot be so narrowly read. The time of application was relevant in *Pangilinan* because the date on which the application was filed was one of the conditions for naturalization. 486 U.S. at 878 nn.2–3, 882–83. But *Pangilinan* stated that "[o]nce it has been determined that a person does not qualify for citizenship, . . . the district court has no discretion to ignore the defect and grant citizenship." *Id.* at 884. What matters is the ultimate qualification for citizenship under the statute, not qualification at certain points in time.

Plaintiffs also argue that federal courts have exercised the equitable remedy of *nunc pro tunc* relief in immigration cases where appropriate, but the cases on which Plaintiffs rely concern other areas of immigration law and not naturalization, which is squarely addressed by *Pangilinan*.

Lastly, Plaintiffs cite to *Harriott v. Ashcroft*, 277 F. Supp. 2d 538 (E.D. Pa. 2003), where an out-of-circuit district court ordered the government to approve a naturalization application under 8 U.S.C. § 1433 *nunc pro tunc* where the applicant was under the age of eighteen when the application was submitted but had since become over the age of eighteen and was facing deportation. The court in *Harriott*, however, did not address *Pangilinan*, and the Third Circuit has since suggested that *Harriott* may be contrary to *Pangilinan*. *See Olopade v. Att'y Gen. of U.S.*, 565 F. App'x 71, 74 (3d Cir. 2014) (following a citation to *Harriott* with a "but see" citation to *Mustanich v. Mukasey*, 518 F.3d 1084, 1089 (9th Cir. 2008), which "interpret[ed] INS

---

circumstances, but observed that the grant may have been bureaucratic error . . . which could not serve as a basis for conferring citizenship on similarly situated persons. We agree.").

*v. Pangilinan* as precluding establishment of citizenship by estoppel where statutory requirements for naturalization have not been satisfied" (citation omitted)). And for the reasons already given, the Court declines to follow *Harriott*.

### III.     Plaintiffs' Claims for Mandamus and Equitable Estoppel Are Dismissed

####        A.     Mandamus

Plaintiffs have not met the criteria for a writ of mandamus ordering the agency to approve the naturalization applications of Jason and Daniel and issue certificates of citizenship. "Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008) (citing *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989)). Here, Plaintiffs fail to meet the first two elements. Because Jason and Daniel are now over the age of eighteen, they do not meet the statutory requirements for naturalization under Section 1433. Furthermore, the complaint fails to allege whether they meet the other requirements for naturalization under the statute. There are, for example, no allegations that they are "physically present in the United States pursuant to a lawful admission," 8 U.S.C. § 1433(a)(2), or are "in the legal custody of the citizen parent," *id.* § 1433(a)(3). And because the allegations do not establish that they meet the statutory requirements for naturalization, equitable relief is unavailable to require the agency to approve their applications and issue certificates of citizenship. There is thus no clear and indisputable right to relief. For similar reasons, there is no plainly defined and peremptory duty on the part of the government to grant such relief.

This is not to say that mandamus relief is never available. As Plaintiffs acknowledged at oral argument, mandamus relief may have been available had Plaintiffs sought it at any point while Jason and Daniel were under the age of eighteen and still met the other statutory

requirements for naturalization.  Put another way, Plaintiffs could have sought mandamus relief during the over ten years while the applications for Jason and Daniel were pending before the agency before Jason and Daniel turned eighteen.  Plaintiffs, however, did not do so.[9]  Under these circumstances, the right to mandamus relief expired when Jason and Daniel turned eighteen and the Attorney General no longer had the statutory authority grant them citizenship.

**B.     Equitable Estoppel**

Plaintiffs' claim for equitable estoppel is also dismissed.  As discussed, *Pangilinan* precludes the availability of equitable estoppel where the statutory requirements for naturalization are not met.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.  The Court recognizes the unfortunate situation that Plaintiffs are in and, in light of Defendants' mistake that caused the delay in this case, hopes Defendants will work expeditiously toward an alternative avenue for relief that is available to Plaintiffs under the constraints of applicable law.

The Clerk of Court is respectfully directed to close Dkt. No. 33.


SO ORDERED.

Dated: August 19, 2022
      New York, New York
                                           LEWIS J. LIMAN
                                           United States District Judge

---

[9] There are also no allegations that Plaintiffs ever attempted to contact the agency about the status of the applications at any time between when the 2002 appeals were submitted and when the renewed appeals were submitted in 2019.